FITGER COMPANY and another, Respondents, vs. KREMER, Dairy and Food Commissioner of Wisconsin, Appellant.

*June 5—June 24, 1929.*

The cause was submitted for the appellant on the brief of the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and for the respondents on that of *Olin & Butler,* attorneys, and *R. M. Rieser,* of counsel, all of Madison.

OWEN, J.   Generally speaking, sec. 98.12 of the Statutes regulates the business of manufacturing and bottling soda-water beverages in this state.   It requires persons engaging therein to secure a license from the dairy and food commissioner, which license shall be granted under such rules and regulations as the commissioner may from time to time prescribe, pertaining to the proper handling and storing of such beverages, and authorizes the commissioner to prescribe such standards of purity for all ingredients used in the manufacture of such beverages as will insure a pure unadulterated product.   Sub. (9) of said section provides as follows:

"No soft drink or other non-alcoholic beverage, except apple cider, not manufactured in this state shall be sold or offered for sale within this state unless the same is first inspected and registered with the dairy and food commissioner. Such inspection of one sample of each such soft drink or non-alcoholic beverage and registration shall be made annually, and an inspection fee of twenty-five dollars for each such soft drink or other non-alcoholic beverage having a distinguishing flavor or name shall be paid by the manufacturer to the dairy and food commissioner for each inspection. The provisions of this subsection shall not apply to soft drinks or other non-alcoholic beverages manufactured in states where no inspection or license for their sale is required."

The plaintiff, the Fitger Company, is a corporation organized under the laws of the state of Minnesota with its principal place of business at Duluth.   It is engaged in the manufacture and sale of soda-water beverages.   Simon Bros. Company, Inc., is a corporation organized under the laws of the state of Wisconsin, with its principal place of business in the city of Madison, engaged in the sale and transportation of goods, wares and merchandise, including soda-water bev-

erages of the Fitger Company. The defendant is the dairy and food commissioner of the state of Wisconsin, and on the 28th day of May, 1927, he demanded of the Fitger Company samples of soda-water beverages manufactured by it and sold in Wisconsin, and demanded the payment of $25 for the inspection of each of said beverages having a distinguishing flavor or name, under the provisions of sec. 98.12 (9), Stats. This action was brought for the purpose of having said sub. (9) of the Statutes declared void, and to restrain said dairy and food commissioner from attempting to enforce the same.

It will be noticed that the challenged statute prohibits the sale of non-alcoholic beverages not manufactured in this state unless the same are first inspected by and registered with the dairy and food commissioner. The inspection provided for is of one sample of each beverage annually. The inspection fee shall be $25 for each beverage having a distinguishing flavor or name, but such inspection shall not be required of beverages manufactured in states where no inspection or license for their sale is required. "Undoubtedly, a state may establish regulations for the protection of its people against the sale of unwholesome meats, provided such regulations do not conflict with the powers conferred by the constitution upon Congress, or infringe rights granted or secured by that instrument. But it may not, under the guise of exerting its police powers, or of enacting inspection laws, make discriminations against the products and industries of some of the states in favor of the products and industries of its own or of other states." *Brimmer v. Rebman,* 138 U. S. 78, 11 Sup. Ct. 213. This provision of the Statutes indicates upon its face that it was not enacted for the *bona fide* purpose of insuring pure and unadulterated products to the people of this state. It does not apply to products coming from those states where no inspection or license for their sale

is required. While the products from those states are immune from inspection, products coming from other states making some effort to insure pure and unadulterated beverages are subject to the burden imposed by this law upon their attempted sale in this state. If discrimination were to be indulged, it would seem that a *bona fide* effort to promote the health of the people of this state would prompt a discrimination in favor of rather than against products coming from those states regulating their manufacture. But this statute exempts from its burdens the products coming from those states where no supervision is exercised and no effort is made to insure their purity. Plainly the law is not an attempt to promote the health of the people of this state.

The attorney general freely concedes in his brief that it is a retaliatory law, and that it cannot stand unless the exemption provision be stricken out, on the theory that it is an independent and separable provision of the statute. But the history of the passage of the act leaves no room for such a conclusion. As originally introduced it did not contain the exemption provision. That came in as an amendment to the original bill, and the court cannot say that it was not an inducement to the passage of the law.

As the statute stands, it discriminates against the products and industries of some of the states in favor of the products and industries of other states and denies to such states the privileges and immunities of the citizens of the several states. Not being an act designed to promote the public good, it also imposes an unjustifiable burden upon interstate commerce. The law reveals no legitimate exercise of the police power of the state. It cannot be sustained.

*By the Court.*—Judgment affirmed.